Steel Processors, Inc., appeals from the judgment of the Mobile Circuit Court dismissing its complaint alleging breach of contract against Sue's Pumps, Inc. Rentals ("Sue's Pumps"), for lack of personal jurisdiction. We affirm. *Page 911 
Steel Processors is an Alabama corporation based in Mobile County. It received a request in January 1991 for bid quotations on labor and materials for repairs to be made on a barge in Green Cove Springs, Florida, owned by Great Lakes Dredge Dock ("Great Lakes"). Steel Processors sent a bid dated February 4, 1991, to Great Lakes in Oak Brook, Illinois, and was told to send a written quotation to Sue's Pumps. Steel Processors then sent a duplicate quotation dated February 15, 1991, to Sue's Pumps in Pompano Beach, Florida. Dennis Scales, a Sue's Pumps employee, telephoned Steel Processors and informed William Prine, Jr., the president of Steel Processors, that its quotation for repair of the dredge had been accepted, and he advised Steel Processors to go forward with the work as outlined. Prine mailed to Sue's Pumps a copy of Steel Processors' shop order, dated February 25, 1991, indicating a total price of $146,801.13 for the repairs.
Steel Processors fabricated materials in Mobile County for the job, shipped the materials to the job site in Florida, and provided labor and equipment at the job site during the repair work on the barge. While repairs were being made, representatives of Sue's Pumps made several telephone calls to Prine at Steel Processors in Mobile County to discuss the project. After the job was completed, Prine sent an invoice dated March 28, 1991, from Steel Processors to Sue's Pumps, c/o Great Lakes Dredge Dock in Green Cove Springs, Florida, requesting payment of $146,801.13 for the repair job. Sue's Pumps sent three checks, totalling $105,721.10, to Steel Processors by a privately owned interstate courier service.[1]
Steel Processors filed a complaint and an amended complaint against Sue's Pumps, alleging that Sue's Pumps still owed it $46,801.13 under their work agreement. Sue's Pumps responded with a motion to dismiss, or, in the alternative, to quash service, alleging that it was a Florida corporation that did not do business in Alabama and was not subject to service of process in Alabama. The trial court granted the motion to dismiss.
The sole issue in this case is whether the Mobile Circuit Court has personal jurisdiction over this nonresident defendant. Jurisdiction of the Alabama courts extends to the permissible limits of due process under our long-arm rule, Rule 4.2, Ala.R.Civ.P.; Dillon Equities v. Palmer Cay, Inc.,501 So.2d 459, 461 (Ala. 1986). Rule 4.2(a)(2) provides in relevant part:
 "(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's:
". . . .
 "(I) . . . having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the Constitution of this state or the Constitution of the United States."
Whether a court has personal jurisdiction over a nonresident defendant must be determined on a case by case basis. "[T]he relevant facts and attendant circumstances must be examined and the relationship among the defendant, the forum, and the litigation analyzed to determine if the defendant has sufficient 'minimum contacts' so that 'the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " Dillon Equities, supra,501 So.2d at 461, quoting International Shoe Co. v. Washington,326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
The foreseeability of the consequences of the defendant's activities is crucial to this analysis. To establish the necessary contacts, there must be a firm nexus *Page 912 
between the acts of the defendant and the consequences complained of. Duke v. Young, 496 So.2d 37, 39 (Ala. 1986). "The fundamental question is, did the defendant act in such a manner that he reasonably ought to anticipate the direct consequences of his actions to be felt by another person residing in another state?" Id. Keelean v. Central Bank of theSouth, 544 So.2d 153 (Ala. 1989), set out a two-part analysis for determining whether an Alabama court can exercise personal jurisdiction over a nonresident defendant:
 "1) the determination of whether it is foreseeable to that nonresident defendant that he will be sued in this state; and
 "2) the determination of the degree of contact that the nonresident defendant has with this state."
Id. at 156-57.
Steel Processors argues that it was foreseeable to Sue's Pumps that it would be sued in Alabama because, it contends, Sue's Pumps placed a request with, and entered a contract with, an Alabama business for materials and labor; its representatives made telephone calls to Steel Processors in Alabama while the repair job was being done; it received materials fabricated in, and sent from, Alabama; and it made partial payments into Alabama on its debt.
Steel Processors further argues that Sue's Pumps had sufficient contacts with Alabama because, it contends, Sue's Pumps was an integral part of the transaction giving rise to Steel Processors' claim; its representatives had telephone conversations with persons in Alabama; it sent correspondence to Alabama; and it received money sent from Alabama.
The facts of this case fall squarely between those of Exparte Lord Son Constr., Inc., 548 So.2d 456 (Ala. 1989), in which we affirmed the trial court's holding that personal jurisdiction was proper over a nonresident defendant, and those of White-Spunner Constr., Inc. v. Cliff, 588 So.2d 865 (Ala. 1991), in which we affirmed the trial court's dismissal for lack of jurisdiction. Therefore, we will look to these and other cases to determine if the limits of due process warrant the exercise of personal jurisdiction over Sue's Pumps based on the facts in this case.
We found a lack of personal jurisdiction over the nonresident defendant in White-Spunner because his contacts with the state were so minimal that it was not foreseeable under the facts of that case that he would be sued in Alabama. White-Spunner, an Alabama corporation, was the general contractor for the construction of a shopping center in Georgia. It hired Cliff, a Georgia resident, to do the masonry work on the project. The contract hiring Cliff was negotiated and executed in Georgia; the construction project was in Georgia; Cliff was paid in Georgia and sent no goods, services, or payments out of Georgia; and the direct consequences on any default by Cliff would be felt in Georgia and not in Alabama. Cliff had no other contracts with Alabama corporations, and made only one telephone call into Alabama to speak with a White-Spunner representative. White-Spunner, supra, at 867. Because of the lack of contacts and the absence of foreseeability, personal jurisdiction did not extend to the nonresident defendant.
In Ex parte Lord Son, jurisdiction was proper because the acts of the nonresident defendant indicated that it "reasonably ought to anticipate the direct consequences of [its] actions to be felt by" Alabama residents. 548 So.2d 456 at 457 (quotingDuke v. Young, supra, at 39). There, Alabama Electric, an Alabama company, supplied materials to a Florida subcontractor that had contracted with a Florida general contractor to do electrical work on a construction project in Florida. Lord 
Son, the general contractor, agreed to issue joint checks to the subcontractor and to Alabama Electric, and issued several checks that were jointly payable, before writing a check to the Florida subcontractor alone for the balance due. In response to an inquiry by the Alabama supplier about its past due balance, the president of Lord Son wrote the Alabama supplier and assured it that Lord Son would *Page 913 
resolve the matter, and thereby "voluntarily undertook responsibility for payment to Alabama Electric of the balance due." Ex parte Lord Son, 548 So.2d at 457. We upheld jurisdiction because, by its action guaranteeing payment of the debt, combined with its action in issuing jointly payable checks, the nonresident defendant "could reasonably have anticipated being sued in Alabama." Id.
In Millette v. O'Neal Steel, Inc., 613 So.2d 1225 (Ala. 1992), we upheld jurisdiction because the defendants' actions indicated that a suit in Alabama was foreseeable, and because the requisite degree of contact with the state was established. The Millettes, Mississippi residents, owned Fabricators, Inc., a Mississippi corporation located in Pascagoula, Mississippi. O'Neal Steel sold steel products from its principal place of business in Birmingham, Alabama, to Fabricators in Mississippi. O'Neal negotiated a line of credit with Fabricators, in exchange for which the Millettes guaranteed Fabricators' debt to O'Neal; the guaranty agreement was executed in Mississippi. One of the Millettes and two other representatives of Fabricators travelled to Birmingham to discuss modifications to the credit agreement with representatives of O'Neal. We found that it was foreseeable that the Millettes would be held accountable on the guaranty in the state of Alabama because one of the nonresident defendants attended negotiations in Alabama about matters that became central to the lawsuit, and because the Millettes knew they were guaranteeing debts for the purchase of steel from a corporation located in Alabama. Furthermore, we held that the Millettes' "conduct in negotiating the line of credit, executing the guaranty, and negotiating its modification" constituted sufficient contacts for the exercise of in personam jurisdiction within the limits of due process. Millette v. O'Neal Steel, supra.
Federal courts have held that, in the absence of other factors tending to support jurisdiction, "a mere one-time purchaser of goods from a seller in a forum state cannot be constitutionally subject to the exercise of personal jurisdiction by the courts of the forum state." Borg-WarnerAcceptance Corp. v. Lovett Tharpe, Inc., 786 F.2d 1055, 1059
(11th Cir. 1986), citing Owen of Georgia, Inc. v. Blitman,462 F.2d 603 (5th Cir. 1972). "The use of interstate facilities (telephone, the mail), [and] the making of payments in the forum state . . . are secondary or ancillary factors and cannotalone provide the 'minimum contacts' required by due process."Scullin Steel Co. v. National Ry. Utilization Corp.,676 F.2d 309, 314 (8th Cir. 1982) (emphasis added).
The Supreme Court has held that the Due Process Clause did not preclude a California court from exercising jurisdiction over a Texas insurance company that had initiated contact with a California resident by mailing to him in California an offer of insurance. McGee v. International Life Ins. Co.,355 U.S. 220, 221, 78 S.Ct. 199, 200, 2 L.Ed.2d 223 (1957). The Court determined that "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connections with that State." Id. at 223, 78 S.Ct. at 201.
There is no evidence that Sue's Pumps initiated contact with Steel Processors. To the contrary, the affidavit of Steel Processors' president, William Prine, indicates that after he sent his first bid for the repair job to Great Lakes, he "was informed that Sue's Pumps was the contractor on that job," and that thereafter he sent a quotation on behalf of Steel Processors to Sue's Pumps in Florida. C.R. 26, 29. The contract was for repair work to be performed in Florida, and for materials, services, and equipment to be delivered to Florida pursuant to the performance of that work. The purchase of goods fabricated in a forum state, and of services provided by a resident corporation of a forum state, does not alone provide the requisite "minimum contacts" for exercise of personal jurisdiction within the bounds *Page 914 
of due process. See Borg-Warner Acceptance Corp., supra, at 1059; and Scullin Steel, supra, at 313-14, and cases cited therein.[2]
There is no evidence that Sue's Pumps had contacts with Alabama other than those it had with Steel Processors during the repair work on the barge in Florida. These contacts were limited to a series of telephone calls concerning the repair job in Florida, and the sending of checks to Steel Processors in Alabama. We hold that it was not foreseeable under these facts that Sue's Pumps would be sued in Alabama, because we do not find sufficient contacts with Alabama to establish personal jurisdiction here. Nothing in the record indicates that Sue's Pumps initiated contact with Steel Processors; the repair project in Florida was developed by an Ohio business; the repairs were made in Florida; and no goods or services went out of Florida. Although Sue's Pumps did send payments for the repairs to Steel Processors in Alabama, and although its representatives made several telephone calls to Steel Processors in Alabama, this is insufficient to qualify as "conduct and connection with the forum State such that [Sue's Pumps] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286,297, 100 S.Ct. 559, 562, 62 L.Ed.2d 490 (1980).
Moreover, we find that the requisite minimum contacts with Alabama are not established by the dealings Sue's Pumps had with Steel Processors. The Mobile Circuit Court correctly determined that it lacked in personam jurisdiction.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON and KENNEDY, JJ., concur.
[1] The checks were made out for the amounts $100,000, $3000, and $2721.10.
[2] Scullin relies on Lakeside Bridge steel Co. v. MountainState Constr. Co., 597 F.2d 596 (7th Cir. 1979), for the proposition that performance by the plaintiff within the forum state of a contract for the manufacture of goods does not, by itself, establish jurisdiction when the contract does not require manufacture within the forum state, even when the nonresident defendant is aware that the manufacturing facility is within the forum state. Scullin Steel, supra, at 313 n. 5;597 F.2d at 601. Although this rule may seem harsh, due process concerns remind us that "[t]he critical relationship is that 'among the defendant, the forum, and the litigation.' " ScullinSteel, supra, at 313, quoting Shaffer v. Heitner, 433 U.S. 186,204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). The fabrication of materials in Alabama by Steel Processors represents "unilateral activity of those who claim some relationship with a nonresident defendant [and] cannot [alone] satisfy the requirement of contact with the forum State."Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40,2 L.Ed.2d 1283 (1958).